**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA

               Plaintiff,

      vs.

NOU XIONG,

               Defendants.

3:13-cr-043-SLG-JDR

<u>**REVISED
RECOMMENDATION
REGARDING
MOTION  TO  SUPPRESS**</u>

(Docket No. 22)

          Defendant **NOU XIONG** moves for an order suppressing evidence seize

during the execution of search warrants 3:12-MJ-00355 and 3:12-MJ-00356 on

grounds that the officers executing the warrants exceeded the scope of the warrants

and no applicable exception to the warrant requirements applies.  Docket 22.  The

motion is opposed by the government.  Docket 23.  An evidentiary hearing was

conducted before the Magistrate Judge on July 25, 2013.  For reasons stated below

the Magistrate Judge recommends that the Motion to Suppress be DENIED.

## Procedural History

Inspectors with the United States Postal Service on or about November 14, 2012 intercepted two suspicious packages that had been mailed to Anchorage from the same address in Sacramento, California. The agents sought and obtained federal search warrants for the packages. *See* Search Warrant applications 3:12-mj-353 and 3:12-mj-354. The affidavit and orders entered were identical except for identifying the respective packages. Upon executing the warrants the agents discovered heroin concealed in one package and methamphetamine concealed in the other. Officers conducted controlled delivery of the two packages. the packages were taken to 905 Muldoon, Space A78. After entering the residence officers seized firearms and arrested the defendant. The defendant was charged with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). Docket 2.

## Findings of Fact

The postal inspector sought and obtained an order authorizing the installation of monitoring of an electronic alerting device and tracking device as a physical surveillance aid for each of the packages on November 15, 2012. Each affidavit describes the execution of a federal search warrant for opening the parcels and what each subject parcel was found to contain.

The first parcel was found to contain about four pounds of a white crystal substance concealed in two layers of zip lock bags and tin foil inside a "sunbeam heater." The second parcel was found to contain about two pounds twelve ounces of a brown substance concealed in two layers of balloons inside jars of "Skippy" Peanut Butter. The substance in the first parcel tested positive for methamphetamine whereas the substance in the second parcel tested presumptively for heroin.

## Application for Controlled Delivery

Postal Inspector Kimberly Dallas applied for and received court orders allowing law enforcement to place electronic monitoring and tracking devices inside each of the packages. These devices allowed law enforcement to track the packages once they were delivered and to notify law enforcement when and if the packages were opened.

Officers of the law installed the tracking devices and then delivered the packages to two separate addresses in Anchorage. Officers executed the court's orders and seized evidence of drug trafficking.

In her affidavits for the tracking warrants the postal inspector requested the following:

"An order for the installation and monitoring of electronic

alerting device and tracking device in the subject parcel for

three (3) days, to aid the officers in detecting when the
suspect(s) open the subject parcel to examine or revoke
(sic) the placed sham controlled substance and to track
the subject parcel if they are moved from the delivery
address to a different location.  In addition, I request that
the Order allow officers to monitor the electronic alerting
device and tracking device on either public or private
property, including the location of initial delivery and any
other property to which the subject parcels are
transported.  After the electronic alerting device goes into
"alert" mode, indicating that the subject parcel was open,
or if it is determined that the altering device or tracking
device are malfunctioning, <u>or if the alerting device does
not go into "alert" mode within two hours after delivery</u>.
United States Postal Inspectors and other law
enforcement officials seek authorization to retrieve the
subject parcel, whether on private or public property."
(Emphasis supplied).

The affidavits then contained the following statement:

"United States Postal Inspectors and other law enforcement officials will only use a properly functioning electronic alerting device and tracking device. If necessary, law enforcement officers then plan to secure the location and submit any necessary further applications."

### Order for Controlled Delivery

Each of the orders authorizing the use of a monitoring device recited a finding of probable cause to believe that a person using the name of the addressee residing at the address on the package was engaged in violations of Title 21 U.S.C. § § 841(a)(1), 843(b), 846 and Title 18 U.S.C. § 1716. The order stated that there was probable cause to believe that an electronic alerting device and tracking device installed in the subject express mail package will assist law enforcement officers in conducting surveillance of the express mail parcel and determining the moment which the parcel was opened and to monitor the movement of the parcel if is moved to a difference location than the delivery address.

The Order contained the following language:

"IT IS FURTHER ORDERED, on the basis of the aforementioned Application and Affidavit, and pursuant to Title 18 USC 3117(a), that <u>members of the United States</u>

Postal Inspection Service, in conjunction with local enforcement, may install, monitor, utilize, and retrieve an electronic alerting device and tracking device within the above described package, either on public or private property, for a period of three (3) days, or whenever the investigation may end, whichever is sooner. Should the electronic alerting device indicate that the package has been opened, or if the electronic alerting device malfunctions, law enforcement officers may retrieve the package and devices, either on public or private property. This authorization is for either day or night. Any search of the property where the package is opened or delivered will require application for a search warrant." (Emphasis added).

Before the packages were delivered the investigative/entry team met for a briefing. The officers talked about what they might do if the beeper alerted or if it malfunctioned or if it never alerted. The packages each contained a GPS and an alerting device. About three hours after the packages were delivered they were moved to a new location at 905 Muldoon, Space A78, by vehicle. The officers waited another three hours before entering the premise as 905 Muldoon.

Postal Inspector Kimberly Dallas did not recall what was announced by the entry team before entering the trailer at Space A78. Timothy Mallor, Special Agent (SA) for Drug Enforcement Agency, testified that usually the officers will announce "Police. Search Warrant." before entering the premises. About six officers entered the premise and fanned out to conduct a protective sweep.

SA Mallor did not see the court order(s) before entering the premises. He relied upon the case agents (DEA and Postal Inspector) to inform him of the plan and assignments at the scene.

SA Mallor saw an adult female with two children inside. When he pushed on a door to a bedroom it was partially blocked. He could see a person later identified as the defendant who appeared to be just waking up from sleeping on the floor against the wall. He observed a pistol on the table about two feel from the defendant. He ordered the defendant to show him his hands. The defendant was handcuffed and asked if there were any other firearms in the room. He responded, "Yes," and the officers retrieved a case with rifles and another case with handguns.

At the evidentiary hearing Postal Inspector Dallas explained her understanding that the term "install" in the order refers to adding the GPS and Beeper Device to the package. The term "monitor" refers to the right to listen to the tone from the beeper and follow the signal from the tracking device. The term "utilize" refers to activating the alerting device and tracking device. The term

"retrieve" refers to the right to locate the package(s) and regain possession of it. No evidence was presented of any exigent circumstance to require immediate entry in the premise by the officers. The officers did not rely upon any other warrant for their entry.

### Discussion

In the instant case, the warrant did not contain language allowing entry to retrieve the alerting device after the elapse of two hours from the delivery. More importantly it did not use any language to allow entry beyond the electronic transmitter either indicating that the box had been opened or the transmitter malfunctioning. The order does not state that the officers may enter premises at will.

The residence the officers entered to retrieve the electronic devices was protected by the Fourth Amendment. A search and unlawful entry is unreasonable under the Fourth Amendment and thus unconstitutional if it is performed without proper judicial authorization. *See e.g.*, Groh v. Ramierz, 540 U.S. 551, 562-63 (2004). Suppression is generally the proper remedy when the police go beyond the scope of an authorized search warrant by searching places or seizing evidence not included in the warrant. *See* United States v. Mittelman, 999 F.2d 440, 445 (9th Cir. 1993). In the instant case the scope of the order authorized the officers to enter and search for their electronic equipment but not to otherwise search the premises or seize evidence not included in the order.

The government recognizes that the order does not use the exact language contained in the affiant's application. The evidence does not explain whether the omission of this language was intentional or merely overlooked. To authorize the officers' entry, the government relies upon the language in the orders wherein members of the Postal Inspection Service were authorized to retrieve an electronic alerting device during a period of three days unless the investigation ended sooner. *See* language underscored on page 5. The statement in its literal form authorizes law enforcement officers to install, monitor, utilize and retrieve an electronic alerting device for a period of three days. It does not describe the manner or conditions in which the alerting device may be installed, monitored, utilized or retrieved.

The second sentence of the last paragraph of the order addresses some conditions in which the package may be retrieved by the officers. If the alerting device indicates that the package has been opened then officers may retrieve the package. If the electronic alerting device malfunctions during the three days or earlier if the investigation terminates, the officers may retrieve the package. The order does not address the retrieval of the package based upon a duration of time after delivery of the package and the alerting device neither indicates that the package has been opened or the electronic alerting device has malfunctioned. Although the postal inspectors sought an authorization to retrieve the subject parcel

if the alerting device does not go into alert mode within two hours after delivery this authority was not granted in the order.

Case law interpreting the Fourth Amendment requires courts to give a practical reading to a search warrant when the terms describing the scope of the warrant are ambiguous. Here, the government argues that the officers were entitled to rely upon the language in the warrant to retrieve the monitoring device. Although the warrant describes with particularity two circumstances under which the monitoring device may be retrieved, neither of these circumstances were present. Because the entry was not justified under the warrant the government must rely upon a recognized exception of the warrant requirement to justify the entry and subsequent seizure of evidence. (The parcel and electronic devices are considered evidence by the government).

Xiong cites <u>United States v. Lawson</u>, 499 F. Appx. 711 (9th Cir. 2012) wherein the Ninth Circuit overturned the defendant's conviction for a felon in possession because the police did not comply with the conditions of the warrant. The government argues that the defendant's reliance upon <u>Lawson</u> is misplaced. The appellate case was not selected for publication in the Federal Reporter by the Ninth Circuit. The government objects to reliance upon an unpublished opinion which has no precedential value in this Circuit. <u>Lawson</u> arose in this district and this court can refer to cases arising from this district as long as the parties have ample

opportunity to address the legal points for which the case is cited.  <u>Lawson</u> is instructive regardless whether it is binding authority.

The government argues that the order in <u>Lawson</u> differs substantially from the orders in the instant case.  In <u>Lawson</u> the transmitter prematurely emitted before the package left police custody.  <u>Lawson</u> held that the warrant under those circumstances did not justify entry into the defendant's home.  It is not disputed that an initial entry into a home is unlawful under the Fourth Amendment unless it is pursuant to a valid warrant or under one of the recognized exceptions to the warrant requirement.  <u>United States v. Hotal</u>, 143 F.3d 1223, 1228 (9th Cir. 1998).

The warrant in <u>Lawson</u> allowed entry into a dwelling to retrieve a controlled package if two hours had elapsed after delivery with no change in the transmitter.  That circumstance did not exist in <u>Lawson</u>.  Therefore, the case is distinguishable on its facts.  The case is instructive to the extent it teaches that where none of the circumstances specified in the warrant occur, entry is not authorized based on the warrant.  This court found no exigent circumstances were present.

The orders at issue were not anticipatory search warrants although such warrants do not contravene the Fourth Amendment.  <u>United States v. Grubbs.</u> 547 U.S. 90 (2006).  Instead each order authorized the placement and monitoring of an electric recording device and tracking device in an express mail package.  This

distinction is important because Xiong's Motion to Suppress, Docket 22, argues that "the search warrants" were improperly executed. Id. p.4-5. What is at issue in this suppression motion is the lawfulness of the officers' entry into the premises to retrieve their electronic equipment. They did not enter to search the premises.

In Grubbs, supra, the Supreme Court held that the Fourth Amendment does not require the triggering condition of an anticipatory search warrant to be set forth in the warrant itself. With regard to the Fourth Amendment's particularity requirement, the court held that the amendment specifies only that the warrant must "particularly describ[e]: 'the place to be searched' and 'the persons or things to be seized.'" That language was decisive in Grubbs because the particularity requirement does not include the conditions precedent to execution of the warrant. Similarly, the Fourth Amendment does not require that the triggering conditions for a beeper order include all the conditions precedent to its execution.

In the instant case retrieval of electronic equipment was contemplated by the court but not under the specific conditions indicated (no alert or malfunction). Retrieval in general is authorized in advance but not under the particular circumstances presented. The order did not say that three days had to pass before the retrieval could take place. The order did not authorize retrieval of the equipment under the circumstances present, however, retrieval of the equipment was not done in strict compliance with the order.

In the instant case the two parcels were addressed to two different locations and ended up at a third location. The order simply does not address how long the officers must wait after the packages have reached their final destination before retrieving them. The period of two hours may or may not be a reasonable time to authorize the retrieval of the parcel but that is a decision for the court to make in its order. Because that contingency was not addressed in the order the officers should have sought a separate warrant.

## The Exclusionary Rule

The government relies upon the good faith exception to the exclusionary rule articulated in United States v. Leon, 468 U.S. 897, 923 (1984). The good faith exception as set out in Leon recognizes an exception to the exclusionary rule for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. at 922. The Supreme Court reasoned that in such circumstances "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Id. at 921. The Leon exception does not apply in the following circumstances:

(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to

render reliance upon it unreasonable; and (4) where the

warrant is so facially deficient that reliance upon it is

unreasonable.

*See* Leon, 468 U.S. at 923.

In Massachusetts v. Sheppard, 468 U.S. 981 (1984), the court said that "the exclusionary rule should not be applied when the officer conducting the search acted in an objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid." In Sheppard the court concluded that the evidence obtained in execution of a warrant was admissible even though the warrant was defective in misstating the items that could be seized. The facts were somewhat different than the instant case in that the affiant had properly set out those items in his affidavit and reasonably relied upon the magistrate's representations that the warrant authorized him to conduct the search that he had requested. Leon and Sheppard read together allow the good faith rule to be applied to warrant cases.

Xiong argues that the orders are facially defective to the extent they can be read as broadly as suggested by the government. He argues that the orders basically give the officers carte blanc authority to search whenever and wherever for three days. That is not the language of the orders.

The Leon rule addresses a presumptively invalid warrant, such as one issued on less than probable cause.  But it also addresses a warrant issued with insufficient particularity and description.  *See e.g.*, United States v. Gray, 669 F.3d 556 (5th Cir. 2012), cert. denied, vacated on other grounds (search warrant for "medical procedure search of a specific area of the body" not sufficiently limited as to the procedures permitted).  The particularity requirements of a warrant is not only to prevent general searches but also to assure the individual who's property is searched and seized of the executing officer's legal authority, his need to search, and the limits of his power to do so.  Groh v. Ramirez, 540 U.S. 551, 124 S. Ct. 1284 (2004).

Xiong argues that the orders are facially defective because they fail to particularize the place to be "searched."    The orders do not authorize a general search but rather a controlled delivery.  They specifically state: "Any search of the property where the package is opened or delivered will require application for a search warrant."

One of the specific circumstances in which reliance on the warrant would not be "objectively reasonable," is where the warrant is "so facially deficient – *i.e.*, in failing to particularize the place to be searched or the thing to be seized -- that the executing officers cannot reasonably presume it to be valid.  Where the description in the warrant is too broad this does not necessarily constitute a "facially

deficient" warrant.  Here, there is nothing inherently wrong with the description when it is viewed in isolation.  The problem is more akin to the kind of particularity of description problem that arises when the description initially seems alright but then a cause of difficulty arises when it comes to executing the warrant.  In the literal sense this is not a facial deficient warrant.

The orders are not facially deficient.  They do not lack particularity as to what is to be searched (retrieved), namely the package, or where it may be seized – at its final destination.  The orders do not suffer from over breadth in their language but only by omission of a specific contingency.  The reference to three days addresses the time frame for the overall investigation involving a controlled delivery not the individual steps to accomplish it.  This leaves for consideration whether the officers' reliance on the orders for entry into the premises was objectively unreasonable.

The exclusionary rule serves to deter police misconduct by suppressing the fruits of that misconduct.  Leon recognizes that it does not make sense to suppress evidence resulting form a magistrate's error in issuing a warrant.  "Good faith" in the Fourth Amendment context has nothing to do with police officers' subjective motives or intentions.  The Supreme Court uses this phrase to refer to the objective reasonableness of a police officer's belief in the validity or existence of a warrant that is, in fact, invalid or non existent.  The good faith exception is not an

exception to the requirement of the Fourth Amendment that all searches be "reasonable." Rather, it is an exception to the general rule that when police violate the Fourth Amendment the resulting evidence is inadmissible in the criminal prosecution of the victim of that unlawful search or seizure. The exclusionary rule is not constitutionally compelled but serves as an instrument for motivating conduct and conformity with the Fourth Amendment.

The instant case is distinguishable from where the officers fail to comply with the search warrant's limitation such as in United States v. Angelos, 433 F.3d 738 (10th Cir. 2006) (police fail to comply with warrant's limitation as to specific part of premises to be search). In the case before the court the deficiency is in the order's failure to address a specific contingency, not solely in the execution by the officers. Where the problem lies solely in the execution of the warrant Leon is not applicable. The officers reasonably relied upon the language in the order that the devices could be retrieved within the time frame allowed by the order. It was reasonable for the officers to conclude that the retrieval of the devices was covered by the orders.

In United States v. Vasser, 648 F.2d 507(9th Cir. 1980), cert. denied 450 U.S. 928 (1981), the court noted that the "policies behind the exclusionary rule are not absolute and must be evaluated realistically and pragmatically on a case-by-case basis." Id. at 510, n.2. The exclusionary rule is judge made, not constitutional;

thus, the application of suppression sanction must be evaluated in each case. <u>Leon</u> 468 U.S. at 906-07. Indeed <u>Leon</u> itself holds that the Fourth Amendment does not per se require suppression of evidence derived from an unconstitutional search.

The Ninth Circuit Court of Appeals has set forth a balancing test to determine whether the exclusionary rule should be applied. *See* <u>United States v. Luk</u>, 859 F.2d 667,675 (1988); <u>United States v. Sears</u>, 411 F.3d 1124, 1128 (9th Cir. 2005). This balancing test has three factors: (1) whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct; (2) the source of the error in the particular case and whether any evidence suggested that the issuing magistrate was inclined to ignore the law; and (3) the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error. <u>Sears</u>, 411 F.3d at 1128. Considering these factors the court concludes that the exclusionary rule should not apply.

The source of the error in this particular case was the omitted language about the specific condition of the devices not alerting after the mere passage of time contrasted with the inclusion of language that allowed for the retrieval of the equipment essentially within a three day time period. The retrieval took place within the three days allowed by the order.

This is not a systemic error that is cause for exclusion of evidence in order to have a significant deterrent effect upon the postal inspectors. Here, there

was an objective reasonable basis for the mistaken belief of the executing officers that the order covered the contingency that occurred, namely the package remained unopened for a period of time after it reached its final destination. The executing officers could reasonably conclude that retrieval of the package was authorized after the passage of a reasonable amount of time. Balancing the likelihood of similar future misreading of a beeper order against the cost of withholding reliable information in the truth seeking process the exclusionary rule need not be applied.

It might be argued that the executing officers should have sought an order specifically addressing the condition they faced and that failing to do so arose to the level of a constitutional violation. However, the oversight was not any more serious than the unauthorized warrants in United States v. Ritter, 752 F.2d 435 (9th Cir. 1985) (state judge's search warrant violated Rule 41's directive that only a federal magistrate may issue a telephonic warrant); United States v. Johnson, 660 F.2d 749, 753 (9th Cir. 1981) (Johnson II) (defendants attacked a technical violation under Federal Criminal Rule 41 and the federal agents involved had discussed and concluded in "good faith" that a federal warrant was not necessary), cert. denied 455 U.S. 912 (1982).

There is no evidence that Agent Dallas recognized that the order was over broad or intentionally failed to include in the drafted order language contained in her affidavit. Nor is there any evidence that would support a claim that the agent

was dishonest or reckless in preparing the order for the court to review. *See* <u>Leon</u> 468 U.S. at 926.

Viewed in its context there is no basis to conclude that the magistrate judge wholly abandoned his judicial role. There is no evidence that the judge was inclined to ignore or subvert the Fourth Amendment. In light of the language in the order, and the nature of the order to particularize the event(s) triggering retrieval of the package when there was no alert or malfunction, the order was not so facially deficient that the retrieval by the officers cannot reasonably presumed to be valid. Here, suppression will not further the purposes of the exclusionary rule.

Although the order does not specifically address what the officers can do if the package has not been opened after a reasonable time has elapsed, the plain language of the order suggests that the electronic altering device and tracking device may be retrieved either on public or private property for a period of three days (or sooner if the investigation ends earlier). A reasonable law enforcement officer could read this order to authorize the retrieval of the electronic devices within the time specified without seeking additional authorization. In short, the deficiency in the order failing to provide instruction on what to do if the package has not been opened is not so clearly deficient as to render inapplicable the good faith exception under <u>Leon</u>.

//

**Conclusion**

The officers' retrieval of the beeper equipment without it "alerting" or malfunctioning was not addressed in the warrants. However, the Leon good faith exception applies to preclude suppression. The execution of the orders was done with a reasonable belief of what was authorized because they allowed retrieval of the equipment within three days.

Accordingly, the Motion to Suppress, Docket 22, should be DENIED.[1] IT IS SO RECOMMENDED.


DATED this 29th day of August, 2013, at Anchorage, Alaska.


*/s/ John D. Roberts*
JOHN D. ROBERTS
United States Magistrate Judge


Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections no later than **NOON on 9/10/2013.** The failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to

---

[1] *The Report and Recommendation entered at Docket 36 is hereby withdrawn and cannot be cited as authority in this case.*

consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation <u>United States v. Howell</u>, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON 9/16/2013**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

       Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. <u>See</u> <u>Hilliard v. Kincheloe</u>, 796 F.2d 308 (9th Cir. 1986).